# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
# MARTINSBURG

**MARK HAINES,**

      Plaintiff,

v.                                                     **Civil Action No. 3:12-CV-51**
                                                                 **(BAILEY)**

**SHERIFF ROBERT "BOBBY" SHIRLEY,**
in his official and individual capacity,
**DEPUTY JOSEPH FORMAN,** in his individual capacity,
**DEPUTY TERRY PALMER,** in his individual capacity,
**LT. CHARLES LYNCH,** in his individual capacity,
**SGT. W.M. SPESSART,** in his individual capacity,
**TROOPER JOSEPH BUSH,** in his individual capacity,
**DEPUTY J.H. JENKINS,** in his individual capacity,
**DEPUTY C. MERSON,** in his individual capacity,
**DEPUTY COREY WELCOME,** in his individual capacity, and
**DEPUTY T.A. SHERMAN,** in his individual capacity,

      Defendants.

## MEMORANDUM OPINION AND ORDER GRANTING MOTION TO DISMISS PLAINTIFF'S OFFICIAL CAPACITY CLAIM

Currently pending before this Court is Defendant, Sheriff Robert "Bobby" Shirley's, Motion to Dismiss Plaintiff's Official Capacity Claim [Doc. 61], filed on March 6, 2013. Plaintiff Mark Haines filed his response in opposition [Doc. 63] on March 20, 2013. Defendant Shirley filed his reply brief [Doc. 64] on March 27, 2013. This matter is now ripe for decision. For the reasons set out below, this Court hereby **GRANTS** the Motion to Dismiss **[Doc. 61]**.

**BACKGROUND**

I.  **Factual Allegations**

The challenged Amended Complaint [Doc. 18] contains the following allegations. Defendant Robert "Bobby" Shirley is the Sheriff of Jefferson County, West Virginia.[1] (Id. at ¶ 3). He is being sued in both his individual and official capacities.[2] (Id.). Following a high speed chase after an attempted bank robbery, the plaintiff drove his vehicle into a field located off of Files Cross Road in Berkeley County, West Virginia. (Id. at ¶¶ 13, 15). Plaintiff stepped out of the vehicle with his hands raised in the air and offered no resistance. (Id. at ¶ 16). Plaintiff was turned around by the defendants and handcuffed with his hands behind his back. (Id. at ¶ 17). Defendants Forman, Palmer, Bush and others pushed plaintiff's body partially over the bed of the truck and began punching him repeatedly with their closed fists. (Id. at ¶ 18). Then, defendant Shirley climbed onto the bed of the truck and kicked the plaintiff repeatedly in the head with a deliberate and sadistic intention to inflict injury on the plaintiff. (Id. at ¶ 19). Eventually, the plaintiff was thrown to the ground by the defendants. (Id. at ¶ 20). While the plaintiff was on the ground, defendant Shirley stomped on the plaintiff's face with a deliberate and sadistic intention to inflict injury on the plaintiff. (Id. at ¶ 21).

---

[1] Subsequent to the alleged incident, Defendant Shirley was re-elected as Sheriff; however, Shirley has since resigned from this position.

[2] Pursuant to Federal Rule of Civil Procedure 25(d), "[a]n action does not abate when a public officer who is a party in an official capacity . . . resigns . . . while the action is pending. The officer's successor is automatically substituted as a party." However, to the extent that the official capacity claim is now dismissed, this Court hereby dispenses with any need to name the successor Sheriff as a party to this action.

II.  **Procedural History**

The plaintiff filed his original Complaint [Doc. 1] in this Court on May 29, 2012.  On November 30, 2012, the plaintiff amended his Complaint primarily to name the previously unidentified police officers, John Does 1-14.[3]  The Amended Complaint [Doc. 18] alleges violations of 42 U.S.C. § 1983, arising from the plaintiff's December 27, 2010, arrest, alleging excessive use of force in violation of the Fourth Amendment, as well as State common law claims for assault, battery, and intentional infliction of emotional distress.[4]

## LEGAL STANDARD

A.  Fed. R. Civ. P. 12(b)(6)

A complaint must be dismissed if it does not allege "'enough facts to state a claim to relief that is *plausible* on its face.'  **Bell Atl. Corp. v. Twombly**, 127 S.Ct. 1955, 1974 (2007) (emphasis added)."  **Giarratano v. Johnson**, 521 F.3d 298, 302 (4th Cir. 2008).  When reviewing a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must assume all of the allegations to be true, must resolve all doubts and inferences in favor of the plaintiff, and must view the allegations in a light most favorable to the plaintiff.  **Edwards v. City of Goldsboro,** 178 F.3d 231, 243-44 (4th Cir. 1999).

When rendering its decision, the Court should consider only the allegations contained in the Complaint, the exhibits to the Complaint, matters of public record, and

---

[3] Since the identification of the John Does, two have been dismissed per plaintiff's voluntary dismissal.  See Docs. 40 and 50.

[4] Plaintiff does not assert State common law claims against defendant Shirley in his official capacity.

3

other similar materials that are subject to judicial notice. ***Anheuser-Busch, Inc. v. Schmoke***, 63 F.3d 1305, 1312 (4th Cir. 1995). In ***Twombly***, the Supreme Court, noting that "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do," *id*. at 1964-65, upheld the dismissal of a complaint where the plaintiffs did not "nudge[ ] their claims across the line from conceivable to plausible." *Id*. at 1974.

## DISCUSSION

A.  Section 1983 Liability

"[S]ection 1983 creates a cause of action against any 'person' who, under color of state law, violates a party's federally protected rights . . .. Municipalities, such as the County Commission, are 'persons' subject to suit under section 1983. ***Monell v. Department of Social Services***, 436 U.S. 658, 690 (1978); *see also* ***Smallwood v. Jefferson County***, 753 F.Supp 657, 659 (W.D. Ky. 1991) ('Because cities are "persons" and because counties are much like cities, then logically, counties are "persons."'). However, 'a municipality can be found liable under § 1983 only where the municipality *itself* causes the constitutional violation at issue. *Respondeat superior* or vicarious liability will not attach under § 1983.' ***City of Canton, Ohio v. Harris***, 489 U.S. 378, 385 (1989) (emphasis in original). To prove that a municipality itself was responsible for a constitutional deprivation, a plaintiff is required 'to identify a municipal "policy" or "custom" that caused the plaintiff's injury.' ***Board of County Com'rs of Bryan County, Okl. v. Brown***, 520 U.S. 397, 403-04 (1997)." ***Gilco v. Logan Cty. Comm.***, 2012 WL 3580056 (S.D. W.Va. August 17, 2012) (Copenhaver, J.).

4

Official-capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent." **Monell v. New York City Dept. of Soc. Servs.**, 436 U.S. 658, 690, n. 55 (1978). As long as the government entity receives notice and an opportunity to respond,[5] an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity. **Brandon v. Holt**, 469 U.S. 464, 471-472 (1985). It is not a suit against the official personally, for the real party in interest is the entity. Thus, while an award of damages against an official in his personal capacity can be executed only against the official's personal assets, a plaintiff seeking to recover on a damages judgment in an official-capacity suit must look to the government entity itself. **Id**.

The Supreme Court has held that "a municipality may not be held liable under § 1983 solely because it employs a tortfeasor." **Monell**, 436 U.S. at 689. The Court found that in light of the language of the statute presupposing liability on one who "subjects [a person], or causes [that person] to be subjected, to a deprivation of federal rights," the statute "cannot be easily read to impose liability vicariously on governing bodies solely on the basis of the existence of an employer-employee relationship with a tortfeasor." **Id**. at 692 (internal quotations omitted). Liability cannot be based solely on the unauthorized acts of an employee. See **Monell**, 436 U.S. at 691. The Court has consistently refused to hold

---

[5] While the issue is not raised in the defendant's Motion to Dismiss, this Court notes that the record is completely devoid of any actual service upon the entity in interest, presumably Jefferson County Commission. The docket reflects that the Complaint and summons were served on all the individually-named defendants, but the Commission itself was never served. It follows that the Jefferson County Commission has neither been given an opportunity to respond, nor has it filed any answer or other responsive materials. Nor has the plaintiff filed a motion to amend. See **Brandon v. Holt**, 469 U.S. 464, 471-472 (1985), citing F. R. Civ. P. 15(b).

municipalities liable under a theory of *respondeat superior*. See **Oklahoma City v. Tuttle**, 471 U.S. 808, 818 (1985); **Pembaur v. Cincinnati**, 475 U.S. 469, 478-79 (1986); **St. Louis v. Praprotnik**, 485 U.S. 112, 122 (1988) (plurality opinion); **Canton v. Harris**, 489 U.S. 378, 392 (1989). Instead, the plaintiff must identify a municipal "policy" or "custom" that caused the plaintiff's injury. See **Monell**, at 694; **Pembaur**, at 480-81; **Canton**, at 389.

"Locating a 'policy' ensures that a municipality is held liable only for those deprivations resulting from the decisions of its duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality." **Bryan County v. Brown**, 520 U.S. 397, 403-404 (1997) (citing **Monell**, 436 U.S. at 694). Furthermore, the plaintiff must "demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged. That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." **Brown**, 520 U.S. at 404.

In this case, the defendants argue that the plaintiff has failed to identify any municipal policy or custom of the Jefferson County Commission which violated plaintiff Haines' rights under § 1983. Additionally, defendants argue that the plaintiff has presented this Court with no evidence that would causally link any act or omission on the part of the Jefferson County Commission with any alleged deprivation of plaintiff's rights under § 1983. This Court agrees.

The plaintiff concedes that he does not contend that a policy or custom of inadequate training or supervision was the moving force behind the alleged constitutional

6

deprivation.  (See [Doc. 63] at 2).  Rather, the plaintiff's theory against defendant Shirley in his official capacity appears to be grounded in plaintiff's assertion that the defendant is the final policy maker for the County in the area of law enforcement.  (Id.).  In support, the plaintiff cites to **Pembaur v. City of Cincinnati**, 475 U.S. 469 (1986), wherein the Court held that a single decision by an official with policy making authority in a given area can constitute official policy and be attributed to the Government itself.  This Court finds that the plaintiff's official capacity claim is premised on a simple misreading of **Pembaur**.

In **Pembaur**, the Supreme Court held that "[t]he fact that a particular official – even a policymaking official – has discretion in the exercise of particular functions does not, without more, give rise to municipal liability based on an exercise of that discretion.  See e.g., **Oklahoma City v. Tuttle**, 471 U.S. at 822-824 . . .."  475 U.S. at 482.  "The official must also be responsible for establishing final government policy respecting such activity before the municipality can be held liable.  Authority to make municipal policy may be . . . delegated by an official who possesses such authority, and of course, whether an official had final policymaking authority is a question of state law."  **Id**. at 483.  The Court cautioned that, "[h]aving said this much, we hasten to emphasize that not every decision by municipal officers automatically subjects the municipality to § 1983 liability."  **Id**. at 481.  The Court went on to hold that "municipal liability under § 1983 attaches where – and only where – a deliberate choice to follow a course of action is made from among various alternatives by the official [ ] responsible for establishing final policy with respect to the subject matter in question.  See **Tuttle**, supra, at 823."  **Id**. at 483.  "Neither the existence of such a policy or custom nor the necessary causal connection can be established by proof alone of the

7

single violation charged." ***Spell v. McDaniel***, 824 F.2d 1380 (4th Cir. 1987), *citing* ***Tuttle***, *supra*.

The single act which gave rise to municipal liability in ***Pembaur*** is easily distinguishable from the case at bar. In ***Pembaur***, municipal liability attached under § 1983 where the Sheriff and other officers forced entry into a third-party premises to serve capiases. Such forceful entries, however, were not forbidden at the time, and the sheriff contacted the prosecutor for advice on how to proceed. As such, the Court found that "the Sheriff [ ] chose a course that was not forbidden by any applicable law, a choice that [he] then had the authority to make. This was county policy . . .." 475 U.S. 486-87 (White, J., concurring). In essence, while this act was an isolated incident, it was not contrary to the county's policy at the time, and was "a deliberate choice to follow a course of action [ ] from among various alternatives . . .." ***Id***. at 483. Accordingly, ***Pembaur*** contemplates a single act not contrary to existing policy.

"Two basic theories have emerged for imposing municipal liability in the more typical situation where fault and causation cannot be laid to a municipal policy 'itself unconstitutional.' The principal theory locates fault in deficient programs of police training and supervision which are claimed to have resulted in constitutional violations by untrained or mis-trained police officers." ***Spell v. McDaniel***, 824 F.2d at 1389. In the case at bar, there is no allegation that the use of excessive force was county policy or that it was condoned by the County Commission. "A second theory, sometimes imprecisely subsumed within the first, locates fault in irresponsible failure by municipal policymakers to put a stop to or correct a *widespread* pattern of unconstitutional conduct by police

8

officers of which the specific violation is simply an example." *Id*. (emphasis added). "[T]he most relevant Supreme Court decisions now require that each of the theories be carefully controlled at critical points to avoid imposing liability flatly rejected by *Monell*. Those critical points are (1) identifying the specific 'policy' or 'custom'; (2) fairly attributing the policy and fault for its creation to the municipality; and (3) finding the necessary 'affirmative link' between identified policy or custom and specific violation. See *Tuttle*, 471 U.S. at 822-24." *Id*.

Practically speaking, courts are aware that "without having been directly authorized, or tacitly encouraged, or inadequately trained in specific ways by responsible municipal policymakers, police officers . . . may fall into patterns of unconstitutional conduct in their encounters with . . . arrestees. This may result *in origin* to any fault of municipal policymakers to warrant treating the conduct as a reflection of 'municipal policy' in the *Monell* sense." *Id*. at 1390 (emphasis in original). "If these constitutional practices become sufficiently widespread, however, they may assume the quality of 'custom or usage' . . .." *Id*., citing *Adickes v. S. H. Kress & Co.*, 398 U.S. at 167-68. "Such a developed 'custom or usage' may then become the basis of municipal liability, but only if its continued existence can be laid to the fault of municipal policymakers, and a sufficient causal connection between the 'municipal custom and usage' and the specific violation can then be established." *Id*. "[J]ust as proof of a single violation will not support the inference that the violation resulted from a municipal 'policy' of deficient training, *see Tuttle* [ ], so it obviously cannot support an inference that the violation resulted from a municipally condoned custom of comparable practices, *see Wellington [v. Daniels*, 717 F.2d 932, 936

9

(4th Cir. 1983)]." *Id*. at 1391.

In this case, plaintiff Haines has asked this Court to find that a county policy arose instantaneously from the single act of excessive force alleged in this case. This is the exact type of "back-door vicarious liability principle" the Supreme Court has sought to avoid. **Tuttle**, *supra* (overly tolerant concepts of policy and causation would impose municipal liability "simply because the municipality hired one 'bad apple.'"). As detailed above, such a theory of liability cannot survive. In essence, the plaintiff asks this Court to adopt the very theory that the Fourth Circuit has rejected: "a single isolated act is insufficient to establish a *de facto* policy." **Spell**, 824 F.2d at 1398. Instead, this Court finds the plaintiff's claim seeks to expose the County Commission to liability on the basis of *respondeat superior*.

B. <u>Plaintiff Fails to State Sufficient Facts to Support an Official Capacity Claim Under 12(b)(6)</u>

To sustain a claim against Jefferson County Commission, a municipality, Haines must establish that it caused deprivation of a federally protected right through the use of a custom or policy which permitted Sheriff Shirley to use excessive force. "Municipal policies can be found in written ordinances and regulations, in certain affirmative decisions of individual policymaking officials, or in certain omissions on the part of policy making officials that manifest indifference to the rights of citizens." **Hessami v. Corp. of Ranson**, 170 F.Supp.2d 626, 632 (N.D. W.Va., Oct. 3, 2001)(Broadwater, J.), *citing* **Carter v. Morris**, 164 F.3d 215 (4th Cir. 1999). "A municipal custom, however, may arise if a practice is so persistent and widespread and so permanent and well settled as to constitute a custom or usage with the force of law." *Id*. at 632-33. In **City of St. Louis v. Praprotnik**,

10

485 U.S. 112, 108 S.Ct. 915 (1988), the Supreme Court further defined when a governmental entity can be held liable for a single constitutional violation, municipalities may be held liable under § 1983 only for acts for which the municipality itself is actually responsible, "that is, acts which the municipality has officially sanctioned or ordered."

In this case, like in *Hessami*, the plaintiff has produced no records of complaints against defendant Shirley or the County Commission that suggests a pattern of behavior that may be characterized as a custom. Therefore, because no propensity has been established, the plaintiff cannot prove that the Jefferson County Commission had knowledge that such existed. Furthermore, unlike *Hessami*, the plaintiff in this case has failed to even allege that the County Commission had such knowledge.

In this case, the plaintiff alleges that Sheriff Shirley was the final policymaking authority. The question of who exercises final policymaking authority is a question of state law to which the Court can apply its independent judgment. ***City of St. Louis***, 485 U.S. at 124-26; *see also* ***Hall v. Marion School Dist. No. 2***, 31 F.3d 183, 196 (4th Cir. 1994). This Court will assume, without deciding, that Sheriff Shirley was a municipal policymaker. *See e.g.*, ***Wellington***, 717 F.2d at 936 (delegation of law enforcement policymaking authority to police chief assumed). Nevertheless, the plaintiff has not only failed to identify a policy or custom that would be sufficient to impose liability on the County Commission, he has failed to state any facts from which this Court could infer such a cause of action. The plaintiff asks this Court to infer liability from a single decision taken by the highest official responsible, defendant Shirley, for setting a policy condoning the alleged excessive force. While the Amended Complaint alleges that defendant Shirley, as Sheriff, was the

ranking official present at the time of the alleged incident, the plaintiff provides little more from which this Court can infer. Notably, the Complaint is devoid of any factual allegations that defendant Shirley instructed the officers to use excessive force. This is unlike **Pembaur**, where the prosecutor instructed the Sheriff and officers to "go in and get" the witnesses, and who subsequently chopped down the door with an axe. 475 U.S. at 473. Rather, the Complaint only makes a general allegation that *all* of the defendants were in a position to stop the excessive force, but did nothing to prevent it. The Amended Complaint does not even allege that defendant Shirley was the first to use excessive force, and that the other officers were simply following suit. Instead, while it is not clear from the face of the Complaint, it appears that the alleged excessive force was initiated by defendants Forman, Palmer, Bush and others, but not by defendant Shirley [Doc. 18 at ¶¶ 18-19].

This Court has read the Amended Complaint as liberally as it can, yet finds it falls well short of stating a plausible claim against defendant Shirley in his official capacity. While the Amended Complaint does state that defendant Shirley "is being sued in both his individual and official capacities," [Doc. 18 at 2], it does not even plead a "formulaic recitation of the elements" to support that claim. **Twombly**, 550 U.S. at 555. Nor does the Amended Complaint allege "bald assertions" or "conclusions" related to an official capacity claim. *Id*. The Complaint fails to identify any evidence which would tend to show that Sheriff Shirley and his subordinates' alleged conduct followed a custom or policy or that it is widespread. See **Carter v. Morris**, 164 F.3d 215. The Amended Complaint simply makes no such allegations. Therefore, this Court finds that any claim against defendant

Shirley in his official capacity not only fails the plausibility standard, the same is simply inconceivable.  See **Twombly**, *supra*.

## **CONCLUSION**

For the foregoing reasons, this Court finds that Defendant, Sheriff Robert "Bobby" Shirley's, Motion to Dismiss Plaintiff's Official Capacity Claim **[Doc. 61]** should be, and hereby is, **GRANTED**.  Accordingly, the official capacity claim is hereby **DISMISSED**.

It is so **ORDERED**.

The Clerk is directed to transmit copies of this Order to all counsel of record herein.

**DATED**: April 16, 2013.

JOHN PRESTON BAILEY
UNITED STATES DISTRICT JUDGE